**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DAVID RIDGELEY, | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Action No. JRR-25-2898 |
| BALTIMORE CITY DEPARTMENT OF TRANSPORTATION, | * | |
| | * | |
| *Defendant.* | | |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

This employment discrimination action arises between Plaintiff David Ridgeley and his former employer, the Baltimore City Department of Transportation (the "Department"), an agency of the City of Baltimore. Mr. Ridgeley worked at the Department between approximately 1988 and his resignation in April 2024. (ECF No. 1, Compl. ¶ 23). On September 3, 2025, Mr. Ridgeley initiated this action by filing in this Court a nine-count Complaint alleging discrimination based on race, color, national origin, age, disability, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*, the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12111, *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and the Maryland Fair Employment Practices Act at Title 20 of Maryland's State Government Article ("MFEPA"), MD. CODE ANN., STATE GOV'T §§ 20-601, *et seq.* Mr. Ridgeley also alleges retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq. See generally* (Compl., ECF No. 1).

Presently pending before this Court is Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 15; the "Motion"). Plaintiff has responded in Opposition (ECF No. 21), and Defendant has filed a Reply (ECF No. 24). The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, Defendant's Motion (ECF No. 15) shall be granted.

## BACKGROUND[1]

### I. Factual History

Plaintiff worked at the Department (and its predecessor, the Department of Public Works) for more than 30 years, from approximately 1988 until his resignation in April 2024. (Compl. ¶¶ 19, 23). The Department is responsible for transportation infrastructure and services within Baltimore City. (*Id.* ¶ 20). At the time of his resignation and during the period relevant to this dispute, Plaintiff held the position of Engineering Associate II. (*Id.* ¶¶ 19, 21-22).

Relevant to his claims, Plaintiff is an African American man born in 1961. (*Id.* ¶ 19). Plaintiff alleges he has suffered from work-induced "severe PTSD, severe anxiety, [and] severe depression," which he has been treated for since January 2009. (*Id.* ¶ 47). Plaintiff claims that over the course of his employment with the Department, he was subjected to discrimination based on race, color, national origin, age, and disability, as well as retaliation for engaging in

[1] On a motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505-506 (4th Cir. 2011). When ruling on a motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir.2009).

protected activities. (Compl. ¶ 24). Despite his eligibility and qualifications, Plaintiff was "denied promotions," and excluded from professional trainings, maliciously isolated from coworkers, and assigned additional responsibilities without compensation. (*Id.* ¶ 25). Plaintiff cites Defendant's failure to address the hostile work environment, including discriminatory and retaliatory conduct as the reason he resigned his position with the Department. (*Id.* ¶ 26).

### A. Denied Opportunities for Promotion and Training

According to Plaintiff, the Department did not promote him despite acknowledging his qualifications and performance. Specifically, the Department of Personnel issued written notices for the years 1997, 1998, 2014, and 2016, which confirmed Plaintiff's eligibility for promotion to Engineering Associate III ("EAIII") and provided that Plaintiff's name would remain on the promotion eligibility list for at least one year. (*Id.* ¶ 28). Despite his eligibility and the existence of vacancies, Plaintiff was not promoted; and he alleges he was intimidated into not applying for promotions to EAIII since December 2016. (*Id.* ¶ 29).

Plaintiff alleges that the promotion denials and intimidation were motivated by his race, color, and national origin, and constituted retaliation for his prior complaints of discrimination and disparate treatment. (Compl. ¶ 29). On one undated occasion, Plaintiff's then-Department chief, Robert Powers, denied Plaintiff an EAIII promotion, stating: "You can leave [my office] because I will not be promoting you under any circumstances!" (*Id.* ¶ 30). Plaintiff believed this was because of his race, color, and national origin. (*Id.* ¶¶ 29, 30). After a reorganization in 1998, Plaintiff was "threatened with termination" and involuntarily transferred to the Highway Engineering division where he was further intimidated by his supervisor, Khalil

Ziaed. (*Id.* ¶ 31). Plaintiff reports that Mr. Ziaed (on an undated occasion) stated, "You should leave DOT because I am not going to promote you even though I heard you do great work!" (*Id.* ¶ 32).

At some point after this comment from Mr. Ziaed, Plaintiff was subjected to various discriminatory actions because of his race, color, national origin, age, and disability. (Compl. ¶ 33). This included: "unwarranted reprimands"; "derogatory insults"; "intentional[] exclu[sion] from professional trainings"; "isolat[ion] from coworkers"; assignment of "additional responsibilities without commensurate compensation"; denial of "reasonable workplace accommodations"; "false[] imprison[ment] within the workplace"; denial of "necessary IT equipment"; and "denied leave." (*Id.* ¶ 33). In 2003, Plaintiff was "reassigned to a position of diminished significance and again denied a promotion to EAIII"; similarly situated, non-African American employees with less experience than Plaintiff were promoted to EAIII. (*Id.* ¶ 34).

Plaintiff claims that other non-African American/non-black Department employees, like Mr. Satinder Kang and his wife, were given favorable treatment during the hiring process, including advance notice of interview questions, despite Mr. Kang's "questionable background and qualifications" for his position and his wife's lack of relevant experience. Defendant changed hiring processes in order to give an advantage to non-African American/non-black candidates over African Americans, including engineering the process so that non-African American/non-black candidates would achieve higher scores than African American candidates. (*Id.* ¶¶ 43, 44, 45). According to Plaintiff, as a result, Mr. Kang's wife was

promoted to EAIII despite having "no engineering experience" while Plaintiff was denied multiple promotions to EAIII even though he was eligible and qualified. (Compl. ¶¶ 42, 43).

In 2005, Mr. Powers directed Plaintiff to train a younger non-African American/non-black employee in Geographic Information Systems ("GIS") technologies. (*Id.* ¶ 35). While at the Department, Plaintiff had previously received specialized training in GIS and was initially on the Department's GIS Committee. (*Id.* ¶ 27). After refusing Mr. Power's directive, Plaintiff received verbal threats and physical intimidation by two non-African American/non-black employees of "India[n] origin" at a Department meeting. This was followed by increased bullying. (*Id.* ¶ 35). In 2010, Defendant created a GIS Team composed of only non-African American/non-black employees of Indian origin. (Compl. ¶ 46). The GIS Team was led by a non-African American woman, Benita Sihota, hired as a GIS Tech in the DOT Survey Section. (*Id.* ¶ 42). According to Plaintiff, Ms. Sihota was later promoted to EAIII, despite being unqualified. (*Id.*).

Throughout his employment, Plaintiff told his supervisors that he was being unfairly targeted in performance evaluations, denied opportunities to attend GIS trainings, and was subjected to hostility from coworkers. (*Id.* ¶ 36). Plaintiff "was the only black employee with GIS training who was denied access to GIS technologies, excluded from further GIS training, and denied promotional opportunities to EAIII." (*Id.* ¶ 36). Plaintiff alleges that he "repeatedly requested promotions, wage increases, performance bonuses, and recognition, which were denied without justification while Defendant provided such advancement opportunities to Plaintiff's non-African American/non-black co-workers. (Compl. ¶ 55).

On unspecified dates, Plaintiff submitted complaints to Baltimore City Council members and the Inspector General because he believed he was being treated differently due to his race, color, national origin, and age. (*Id.* ¶ 37). On one undated occasion, following his complaint to the Baltimore City Council President, staff from the Council President's office contacted Plaintiff's then-supervisor, Mr. Bimal Devkota, regarding the alleged discrimination. (*Id.* ¶¶ 90-92). Mr. Devkota responded to Plaintiff by stating, "Why don't you find another [look for] job!" (*Id.* ¶ 92; brackets in original). In retaliation for his complaints, Plaintiff experienced escalating hostilities from supervisors and coworkers. (*Id.* ¶ 37).

**B. Denied Medical Leave and Accommodations**

In 2004, Plaintiff requested leave for medical appointments, which supervisor Al Lazano denied. (Compl. ¶ 38). This was part of a pattern in which Mr. Lazano refused to sign Plaintiff's leave slips, insulted Plaintiff, and intentionally fostered a hostile work environment to provoke Plaintiff's resignation. (*Id.* ¶ 38). Mr. Lazano and Mr. Ziaed, together, sought to verbally provoke Plaintiff into a confrontation. Mr. Lazano told Plaintiff, "You are nothing and you don't do any work." (*Id.* ¶ 39).

In January 2009, Plaintiff began experiencing work-induced health conditions that impaired his ability to perform unspecified "essential job functions." (*Id.* ¶ 40). The Department denied Plaintiff's requests for unspecified "reasonable accommodations." (*Id.* ¶ 40). Since January 2009, Plaintiff has been treated for PTSD, anxiety, and depression due to work-related stress. (Compl. ¶ 47).

On November 16, 2023, Plaintiff's healthcare provider recommended that he complete an FMLA Leave Request Form because of his work-induced health conditions. (*Id.* ¶ 47). On December 6, 2023, Defendant approved Plaintiff's FMLA leave, effective December 11, 2023, through May 24, 2024. (*Id.* ¶ 48). Plaintiff alleges that he experienced escalating hostility during the period of his approved FMLA leave, including denial of reasonable accommodation, exclusion from professional opportunities, and harassment by supervisors and coworkers. (*Id.* ¶ 49). While on approved FMLA leave, in April 2024, anticipating his return to work, Plaintiff resigned employment with the Department. (*Id.* ¶¶ 50-51).

## II. Administrative and Judicial Procedural History

Plaintiff alleges that, beginning around September 2023, he first filed complaints against the Department with the Department of Human Resources, the Office of the Inspector General, and the United States Department of Justice Civil Rights Division. (Compl. ¶¶ 9, 53). In April 2024, Plaintiff "completed an inquiry with" the Baltimore office of the U.S. Equal Opportunity Commission ("EEOC"), and thereafter filed a Charge of Discrimination on or about October 10, 2024. (Compl. ¶ 10, citing EEOC Charge No. 531-2024-03125; ECF No. 15-2, Exhibit 1).[2] The charge included allegations of discrimination based on race, color, national origin, age, and disability; as well as hostile work environment and retaliation. (*Id.*).

[2] "The Court may, under Rule 12(b)(6), and without converting the Motion to Dismiss into a Motion for Summary Judgment, consider exhibits insofar as they are "integral to and explicitly relied on in" the Complaint and to the extent that their authenticity is not challenged by the plaintiff." *Higgins v. Maryland Dep't of Agric.*, BEL-11-0081, 2012 WL 665985, at *4 (D. Md. Feb. 28, 2012) (citation omitted). As exhaustion of administrative remedies entitles Plaintiff, in part, to pursue a judicial action on the matters he complains of here, the Court considers the EEOC Charge in resolving the Motion.

The EEOC issued a right-to-sue letter which included a Notice of Rights, advising Plaintiff that he could file suit within 90 days from receipt of the letter.

Plaintiff initiated this action on September 3, 2025, by filing a nine-count Complaint. (ECF No. 1). As mentioned above, the Complaint alleges the following against the Department: (1) race, color, and national origin discrimination (disparate treatment) in violation of Title VII (Count I); (2) hostile work environment in violation of Title VII (Count II); (3) retaliation in violation of Title VII (Count III); (4) age discrimination (disparate treatment) in violation of the ADEA (Count IV); (5) disability discrimination in violation of the ADA (Count V); (6) race discrimination in violation of Section 1981 of the Civil Rights Act (Count VI); (7) race, color, national origin, age, and disability discrimination in violation of the MFEPA (Count VII); (8) retaliation in violation of the FMLA (Count VIII); and (9) constructive discharge in violation of Title VII, Section 1981, the ADA, the ADEA, the MFEPA, and the FMLA (Count IX).

In response to the Complaint, Defendant filed the instant Motion, which has been fully briefed and is now ripe for review.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. "'[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 354 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). The court assumes all well-pled facts set forth in a complaint are true when evaluating a motion under Rule 12(b)(6). *Bell Atl., Corp. v. Twombly*, 550 U.S. 544 (2007); *Brockington v. Boykins*, 637 F.3d 503, 505-506 (4th Cir. 2011).

## ANALYSIS

### I. The Department is not an entity that can sue or be sued

The Department correctly notes it does not have the capacity to sue or be sued as a matter of law; therefore, it is not a proper party to this action. *Douglas v. Mayor and City Council of Baltimore City*, RDB-15-0718, 2016 WL 927146 at *1 n.1 (D. Md. Mar. 4, 2016) (dismissing

claims against Department and recognizing that, absent statutory or constitutional provision authorizing suit of Department, Department bears no unique legal identity and "cannot be sued under Maryland law") (citing *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 393 (4th Cir. 2014)); *see also Open Justice Baltimore v. Baltimore City Law Department*, ELH-22-1901, 2023 WL 5153654, at *17 (D. Md. Aug. 10, 2023) (dismissing claims against Baltimore City Law Department based on no capacity to sue or be sued). The Department therefore seeks dismissal of this action as against it, but clarifies that it does not seek dismissal of the entire action with prejudice. (ECF No. 15-1 at 3-4; ECF No. 24 at 1 n.1). Plaintiff concedes this point in opposition to the Motion. (ECF No. 21-1 at 9-10).[3]

Pursuant to Federal Rule of Civil Procedure Rule 17(b), "capacity to sue or be sued shall be determined by the law of the state where the court is located." Maryland law permits localities, such as Baltimore City, to create charters, establishing an entity which may sue and be sued. *See* MD. CONST. ART. XI-A, §2; MD. CODE ANN., LOCAL GOV'T § 9-201(2). The Baltimore City Charter creates a municipal "corporation, by the name of the 'Mayor and City Council of Baltimore,'" which "may sue and be sued." Baltimore City Charter art. 1, § 1. The Department is not an entity with an independent legal identity separate from the Mayor and City Council of Baltimore; nor does it have the capacity to sue or be sued. *Douglas*, 2016 WL 927146 at *1 n.4; 6A Wright & Miller, Fed. Prac. and Proc. § 1562, n.12 (3d ed.) (collecting cases determining departments within city governments lacked capacity). Accordingly, the

[3] In his Opposition, having conceded that the Department is not the properly named Defendant, Plaintiff requests leave under Rule 15(a) to substitute the "proper municipal entity." (ECF No. 21-1 at 9-10). As described in detail below, and as set forth in the accompanying Order, the Motion will be granted for substantive pleading failures having nothing to do with the Department's capacity to be sued. As such, the Complaint will be dismissed and the case closed.

Department shall be dismissed as a party to this action, and Plaintiff will be permitted leave to amend to correct the issue. The Court will proceed to analyze the issues presented in the Motion as if the proper party had been sued.[4]

**II. Timeliness of Counts I, III, IV, V, and VII**

Defendant asserts that Counts I, III, IV, V, and VII, which are brought under Title VII, the ADA, the ADEA, and MFEPA, respectively, "must be dismissed with prejudice" to the extent they are based on conduct that occurred prior to December 15, 2023, and which Plaintiff knew to be discriminatory. (ECF No. 15-1 at 5-6). Plaintiff counters: (i) that he has timely filed his claims because he filed the action within the 90-day period following the EEOC's notice of the right to sue, (ECF No. 21-1 at 10); (ii) the statute of limitations is an affirmative defense which may only be applied if the grounds exist on the face of the complaint, (*id.* at 11); and (iii) Defendant ignores the continuing violation doctrine, which applies to his hostile work environment claims. (*Id.* at 11).

"As a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing suit." *Malloy v. Mayor and Town Council of Town of Edmonston, Maryland*, DKC-22-2224, 2023 WL 3058311, at *2 (D. Md. Apr. 24, 2023) (quoting *Newell v. Richards*, 323 Md. 717, 725 (1991)). A claim should only be dismissed as untimely pursuant to Rule 12(b)(6) "when it is clear from the face of the complaint that the claims are time barred." *Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446, 456 (D. Md. 2014) (citation omitted).

---

[4] *James v. Frederick Cnty. Pub. Schs.*, 441 F.Supp.2d 755, 758 (D. Md. 2006) (proceeding with analysis of motion to dismiss as if claims had been brought against proper party). *See* footnote 3, *supra*.

## A. Counts I, III, IV, and V under Title VII, the ADA, and the ADEA

Prior to filing a private action under Title VII, the ADA, or the ADEA, a plaintiff must (1) file a timely administrative charge of discrimination, and (2) receive, and timely act upon, the EEOC's notice of the right to sue. 42 U.S.C. §§ 2000e-5(b), 2000e-5(f)(1); *Long v. Ringling Brothers-Barnum & Bailey Combined Shows, Inc.*, 9 F.3d 340, 342 (1993) (identifying two prerequisites for Title VII claim) (citing 42 U.S.C. §§ 2000e–5); *Krouse v. Johns Hopkins HealthCare LLC*, RDB-18-1838, 2019 WL 979298, at *1-2 n.2 (D. Md. Feb. 28, 2019) (recognizing Title VII requirements applicable to ADA Title I claims) (citing 42 U.S.C. § 2000e-5 and 42 U.S.C. § 12117(a)); 29 U.S.C. § 626(d)-(e) (requiring same for ADEA claims). For claims under each statute, the underlying administrative charge must be filed with the EEOC within 300 days[5] of the alleged discriminatory conduct. 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a); 29 U.S.C. § 626(d)(1)(B); *see, e.g.*, *Krouse*, 2019 WL 979298, at *1-2 (citing 42 U.S.C. § 2000e-5(c)).

The 300 days is a statutory limitations period that operates to bar claims for allegedly unlawful conduct that occurred before that time. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002); *Williams v. Giant Food, Inc.*, 370 F.3d 423, 428-29 (4th Cir. 2004). This statutory 300-day period bars "discrete discriminatory acts," such as "termination, failure to promote, denial of transfer, or refusal to hire," "even when they are related to acts alleged in

---

[5] The statutes require a claimant to file within 180 days of the alleged unlawful practice, except in "deferral" jurisdictions, where the period is 300 days. 42 U.S.C.A. § 2000e–5(e)(1); 29 U.S.C. § 626(d)(1)(B); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404, 404 n.3 (4th Cir. 2002). "A deferral jurisdiction is a state, such as Maryland, that has a law prohibiting employment discrimination on the same bases covered by the federal statutes and authorizing a state or local agency to grant or seek relief from such discrimination." *Krouse*, 2019 WL 979298, at *1-2 (citing 42 U.S.C. § 2000e-5(c), (d)); *Edelman*, 300 F.3d at 404, 404 n.3; *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 661-62 (D. Md. 2011)).

timely filed charges." *Morgan*, 536 U.S. at 113-14. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. The untimely past acts may, however, be used as background evidence in support of a timely claim. *Id.* Conversely, under the continuing violation doctrine, conduct outside of the statutory period may be actionable for a hostile work environment claim, which involves a series of repeated conduct, if an act "contributing to that hostile environment" takes place within the statutory time period. *Morgan*, 536 U.S. at 105, 115-18, 120-21.[6]

Here, Plaintiff alleges that he filed an administrative charge with the EEOC on October 10, 2024. (Compl. ¶ 10). Therefore, a claim for discrete discriminatory conduct occurring more than 300 days before the filing (*i.e.*, December 15, 2023) is time-barred. *Morgan*, 536 U.S. at 113-14. Counts I, III, IV, and V, under Title VII, the ADA, and ADEA, allege discrete discriminatory conduct, as they involve claims other than hostile work environment, including failure to promote and denial of opportunities. Thus, the continuing violation doctrine does not extend the statutory period for claims based on such alleged conduct. *See Belton v. City of Charlotte*, 175 F. App'x 641, 653-55 (4th Cir. 2006) (affirming summary judgment on discrimination claims for failure to promote and denial of opportunities as time-barred discrete acts to which the continuing violation doctrine does not apply); *Allen v. Discovery Comms., LLC*,

[6] Defendant argues that the continuing violation doctrine could not apply to extend the time period because Plaintiff "claims to have known" the conduct was discriminatory. (ECF No. 15-1 at 5 (quoting *McCain v. Waste Management, Inc.*, 115 F. Supp. 2d 568, 573 (D. Md. 2000)). However, such knowledge-based tests for differentiating discrete versus continuing violations were replaced by the Supreme Court in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), which does not take plaintiff's awareness of the discriminatory nature of conduct into account. *See id.* at 117-18 ("Nor, if sufficient activity occurred by day 100 to make out a claim, does it matter that the employee knows on that day that an actionable claim happened; on day 401 all incidents are still part of the same claim.").

PWG-15-1817, 2016 WL 5404558, at *5 (D. Md. Sep. 28, 2016) ("The 'continuing violation theory,' . . . only applies . . . when an employee asserts a hostile work environment claim.") (quoting *Smith v. Vilsack*, 832 F. Supp. 2d 573, 581 (D. Md. 2011)); *see also Williams v. Giant Food, Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) ("Because failure to promote is a discrete act of discrimination . . . the continuing violation doctrine does not apply here.") (citing *Morgan*, 536 U.S. at 113)); *Leonard v. Towson Univ.*, GLR-21-1464, 2022 WL 3867949, at *5 (D. Md. Aug. 30, 2022) ("[T]he continuing violation doctrine does not apply to failure to accommodate claims.").

Therefore, to the extent Counts I, III, IV, and V raise discrimination claims based on actions occurring prior to December 15, 2023, those claims shall be dismissed as time-barred. *Allen*, 2016 WL 5404558, at *5.[7]

**B. Count VII under MFEPA**

Under MFEPA, claims other than harassment must be filed within 300 days of the conduct at issue. MD. CODE ANN., STATE GOV'T § 20-1004(c)(2)(i); *Marrero v. Verizon Maryland LLC*, MJM-24-3311, 2026 WL 2469219, at *4 (D. Md. Aug. 24, 2026). MFEPA claims of harassment must be filed within two years of the alleged conduct. MD. CODE ANN., STATE GOV'T § 20-1004(c)(3)(i); *Gibson v. Maryland Motor Vehicle Admin.*, BAH-20-3220, 2024 WL 51132, at *11 (D. Md. Jan. 4, 2024).

[7] The court observes that where facts are not available to assess timeliness at the pleading stage, the issue "must be resolved at a later date, either on a motion for summary judgment or at trial." *Rogers-Walker v. Brivo, Inc.*, TJS-25-3213, 2026 WL 2275654, at *7 (D. Md. Aug. 6, 2026) (quoting *Wallace v. Freight Drivers & Helpers Local No. 557 Pension Fund*, No. JKB-11-2062, 2012 U.S. Dist. LEXIS 91321, at *24 (D. Md. July 2, 2012)). However, as set forth below and in the accompanying Order, Counts I, III, IV, and V shall be dismissed based on substantive pleading failures other than untimeliness.

Although somewhat unclear, Count VII under MFEPA appears to allege discrete discrimination under the federal statutes (Compl. ¶ 189) as well as hostile work environment. (Compl. ¶ 190). As stated above, Count VII is time-barred to the extent it purports to state a discrete claim of discrimination for conduct occurring before December 15, 2023. *Teel v. Maryland Natural Treatment Solutions, LLC*, RDB-23-1694, 2024 WL 1075421, at *4 (D. Md. Mar. 12, 2024) (applying *Morgan* analysis for discrete discrimination versus hostile environment to MFEPA). For a hostile work environment claim under MFEPA, however, "the date of termination can be considered in determining the 'last possible act that could conceivably support a claim for a hostile work environment." *Corrigan v. Balt. Police Dep't*, ELH-24-03497, 2026 WL 73800, at *21 (D. Md. Jan. 9, 2026) (quoting *Purcell v. Mission Hosps.*, LHT-07-385, 2008 WL 5120620, at *5 (W.D.N.C. Dec. 4, 2008)) (collecting cases). Plaintiff's April 2024 resignation, therefore, may be considered in determining the last possible act in support of the hostile environment claim under MFEPA. Therefore, Count VII is not time-barred to the extent it alleges discrete discrimination occurring on or after December 15, 2023, and/or to the extent it alleges a hostile work environment claim. For the reasons set forth below, however, Count VII shall be dismissed for substantive pleading failures not pertaining to timeliness.

## III. Defendant's Challenges Across Different Statutes

As explained, Plaintiff raises discrimination claims under five distinct statutes: Title VII, 42 U.S.C. § 1981, the ADEA, the ADA, and MFEPA.

"Title VII prohibits employment discrimination based on race, color, religion, sex, or national origin . . . and prohibits retaliation against anyone who opposes those practices or makes a charge of discrimination in violation of Title VII." *Faulconer v. Centra Health., Inc.*, 808 F. App'x 148, 153 (4th Cir. 2020) (emphasis omitted) (citing 42 U.S.C. §§ 2000e-2, 2000e-3).

Section 1981 of the Civil Rights Right Act of 1866, 42 U.S.C. § 1981, guarantees a person's equal right to make contracts regardless of race: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). This provision has been interpreted "to forbid all racial discrimination in the making of private as well as public contracts." *Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 170 (4th Cir. 2020) (unpublished) (quoting *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987)).

The ADEA "protect[s] a relatively old worker from discrimination that works to the advantage of the relatively young." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 590-91 (2004).

Title I of the ADA expands workplace protections for individuals with disabilities to certain private employers. 42 U.S.C. §§ 12111(2), (5); *see Peninsula Reg'l Med. Ctr. v. Adkins*, 448 Md. 197, 209-11 (2016). Title I of the ADA provides, in relevant part: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

MFEPA prohibits gender and disability discrimination. MD. CODE ANN., STATE GOV'T § 20-606(a). Although Title VII, the ADA, and Section 1981 implicate different requirements and protections, Maryland's highest court has explained that "courts interpret the MFEPA consistent with its [respective] federal corollar[ies], absent 'legislative intent to the contrary.'" *Doe v. Cath. Relief Servs.*, 484 Md. 640, 680-81 (2023) (citation omitted); *see also Hammond-Thompson v. Temple View Capital*, ABA-23-1502, 2026 WL 850510, at *11 (D. Md. Mar. 27, 2026) ("[C]ourts 'import Title VII law into the analyses' under MFEPA 'unless Maryland law clearly differs.'") (quoting *Membreno v. Atlanta Rest. Partners, LLC*, 517 F. Supp. 3d 425, 435 (D. Md. 2021)); *Gunter v. Alutiiq Advanced Sec. Sols., LLC*, JRR-20-3410, 2026 WL 547920, at *7 (D. Md. Feb. 27, 2026) (collecting cases); *Peninsula Reg'l Med. Ctr.*, 448 Md. at 219 (considering federal ADA cases for guidance on MFEPA).

"Maryland courts have thus applied federal frameworks in evaluating employment discrimination claims under both federal and state discrimination laws." *Mulamba v. Bd. of Educ. of Baltimore Cnty.*, No. 1656 Sept. Term 2023, 2024 WL 5103270, at *4 (Md. Ct. Spec. App. Dec. 13, 2024), *cert. denied,* 490 Md. 288 (2025), and *cert. denied,* 146 S. Ct. 184 (2025). Accordingly, the Court addresses Defendant's arguments regarding Plaintiff's claims under these statutes, grouping claims together where appropriate.

### A. Race, Color, and National Origin Discrimination: Counts I, VI, and VII under Title VII, Section 1981, and MFEPA

Counts I, VI, and VII allege a host of discriminatory conduct, which can generally be categorized as claims for failure to promote Plaintiff to EAIII (Compl. ¶¶ 64, 166-69, 190) and disparate treatment regarding GIS technology opportunities, reprimands, leave policies, and

his placement in the unit. (*Id.* ¶¶ 66, 71, 72, 174, 190). Defendant argues that dismissal is warranted because Plaintiff fails to allege that he "actually applied for a promotion and was denied," or that any alleged comparators were similarly situated to him. (ECF No. 15-1 at 7).

Where, as here, Plaintiff does not allege direct evidence of discrimination, Plaintiff may establish discrimination under the burden-shifting framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first demonstrate a prima facie case of discrimination to show that the employer took adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." *Lewis-Davis v. Bd. of Educ. of Balt. Cnty.*, ELH-20-0423, 2021 WL 4772918, at *8-10 (D. Md. Oct. 13, 2021). If a plaintiff does so, the burden of production shifts to the defendant employer to produce evidence of a legitimate, non-discriminatory reason for its conduct. *Id.* at *9. Although Plaintiff is not required to establish a prima facie case to survive a motion to dismiss, the framework is informative at this stage because Plaintiff must allege facts that (taken as true) plausibly state violation of Title VII above a speculative level. *Bing v. Brivo Sys.*, LLC, 959 F.3d 605, 617 (4th Cir. 2020) (citation omitted), *overruled on other grounds by Britt v. DeJoy*, 45 F.4th 790, 795-96 (4th Cir. 2022); *Laurent-Workman v. Wormuth*, 54 F.4th 201, 210, 212 (4th Cir. 2022) (similar); *Lewis-Davis*, 2021 WL 4772918, at *9 ("At this juncture, reference to these methodologies merely serves to inform a court's evaluation of a motion to dismiss or for summary judgment.")

Title VII, Section 1981, and MFEPA share the same requirements for a prima facie case of failure to promote and disparate treatment. *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 n.5 (4th Cir. 2004) (recognizing same elements for failure to promote claim under Section

1981 and Title VII); *Bryant v. Aiken Regional Medical Centers, Inc.*, 333 F.3d 536, 545 n.3 (4th Cir. 2003) ("T]he framework of proof for disparate treatment claims . . . is the same for actions brought under Title VII, or § 1981, or both statutes.") (quoting *Mallory v. Booth Refrig. Supply Co.,* 882 F.2d 908, 910 (4th Cir.1989)); *Monero v. Brown, Parker, Demarinis Advertising*, DKC-25-4285, 2026 WL 2349471, at *4 (D. Md. Aug. 13, 2026) (evaluating failure to promote and disparate treatment claims under Title VII standards "[b]ecause "Title VII case law applies to both § 1981 and MFEPA claims").

**1. Failure to Promote**

"[T]o properly plead a failure-to-promote claim under Title VII . . . a plaintiff must allege specific facts establishing four elements . . . : '(1) [he] is a member of a protected group, (2) there was a specific position for which [he] applied, (3) [he] was qualified for that position, and (4) [his employer] rejected [his] application under circumstances that give rise to an inference' of liability." *Walton v. Harker*, 33 F.4th 165, 176 (4th Cir. 2022) (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 430, 430 n.5 (4th Cir. 2004)).

Plaintiff claims that during his 37 years of employment with the Department, Defendant failed to promote him to the EAIII position due to his race. (Compl. ¶ 64). As an African American male, it is undisputed Plaintiff is a member of a protected class. Accordingly, the Court will focus its analysis on the second, third, and fourth elements of Plaintiff's prima facie case; and in view of the Court's determinations regarding timeliness, *supra*, the Court will focus its analysis more narrowly on allegations of conduct on or after December 15, 2023.

As for the second element, the application requirement can be "relaxed" when a given circumstance renders it unrealistic. *Monero v. Brown, Parker, Demarinis Advertising*, DKC-25-4285, 2026 WL 2349471, at *4 (D. Md. Aug. 13, 2026) (quoting *Williams*, 370 F.3d at 431). More specifically, for a prima facie case, a plaintiff must submit an application if an employer has a formal system of posting vacancies and inviting employees to apply for them. *Williams*, 370 F.3d at 430. However, if the employer fails to make its employees aware of vacancies, such as by failing to post them or by seeking out employees rather than using an application system, the requirement is "relaxed" and the employee will be treated "as if [he] had actually applied for a specific position." *Id.* at 431. Under the relaxed version of the requirement, a plaintiff must show he would have applied or that application would have been futile, *i.e.* he would have applied but for the employer's discrimination. *Id.* at 432-33.

Here, Plaintiff does not adequately allege facts regarding the application process or that his application(s) would have been futile. Plaintiff simply alleges he was denied promotions "despite documented longstanding eligibility and qualifications," but does not allege facts as to involvement with the application process since 2016. (Compl. ¶¶ 25, 28, 29). *Hill v. Maryland Dep't of State Police*, JRR-25-2281, 2026 U.S. Dist. LEXIS 210452, at *14-15 (D. Md. Sep. 17, 2026) (finding plaintiff failed to plausibly allege second element of failure to promote where plaintiff did not allege application for the vacancy, that employer failed to post the vacancy, or "that an application was impossible or otherwise unnecessary"). Indeed, Plaintiff's allegations suggest Defendant had an application process for vacancies and that Plaintiff was "intimidated into not applying for promotions to an EAIII since December 2016." (Compl. ¶ 29). Although Plaintiff refers to two comments from former supervisors that they would not

promote him, (Compl. ¶¶ 29, 30), Plaintiff provides no specific allegations regarding intimidation after December 15, 2023, or how it prevented him from applying for vacancies or promotions, if at all. Plaintiff's Complaint fails as to the second requirement.

Further, Plaintiff fails to allege he was qualified for a promotion during the relevant, actionable period; rather, Plaintiff's allegations as to years or times of his eligibility for promotion do not include dates following the statutory cutoff of December 15, 2023:

> [T]he Department of Personnel . . . issued written notices in 1997, 1998, 2014, and 2016 confirming Plaintiff's eligibility for promotion to the position of [EAIII]. Each notice stated that Plaintiff's name would remain on the eligibility list for at least one year.

(Compl. ¶ 28). Therefore, Plaintiff does not sufficiently allege he was eligible for promotion on or after December 15, 2023. *See, e.g.*, *Hill*, 2026 U.S. Dist. LEXIS 210452, at *16-17 (dismissing failure-to-promote claim where employee plaintiff failed to allege he could have been promoted according to a list of those eligible for promotion). Because Plaintiff fails to plead that his employer could have promoted him during the relevant (*i.e.*, actionable) time period, Plaintiff fails to sufficiently allege he was qualified for the EAIII position.

Regarding the fourth requirement, Plaintiff fails to plausibly allege facts that his supervisor rejected his application under circumstances that give rise to an inference of racial discrimination. To plead this element, a plaintiff may—but is not required to—allege facts that (assumed as true) demonstrate that "similarly-situated employees outside the protected class received more favorable treatment." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004). Where a plaintiff relies on comparator evidence to establish circumstances giving rise to an inference of discrimination, a plaintiff must clearly allege facts that, taken as true,

establish the similarity of the comparators. To the extent a plaintiff relies on comparator evidence, a plaintiff establishes sufficient similarity "by showing that they both (1) 'dealt with the same supervisor,' and (2) were 'subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Chatelle v. Maryland*, GLR-21-1734, 2022 WL 2953042, at *8 (D. Md. July 25, 2022) (quoting *Tinsley v. City of Charlotte*, 854 F. App'x 495, 500–01 (4th Cir. 2021)). However, comparator evidence is not required so long as the plaintiff can "establish an inference of unlawful discrimination through other means." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747-48 (4th Cir. 2017), *as amended* (Aug. 11, 2017).

Here, Plaintiff fails to allege sufficient similarity with the identified comparators. Plaintiff cites three non-African American/non-black individuals, Mrs. Benita Sihota, Mr. Satinder Kang, and the spouse of Mr. Satinder Kang (who is not identified by her own name). (Compl. ¶¶ 42, 43, 44). Plaintiff does not allege whether any of the three individuals was in the same unit as Plaintiff or if any of them worked under the same supervisor at the times of their respective promotions to EAIII. *See id.*; *Hughley v. Marion*, GLR-22-1654, 2023 WL 5957185, at *7-8 (D. Md. Sep. 13, 2023) (finding comparator allegations insufficient where plaintiff failed to allege whether comparators shared same supervisor as plaintiff or "were subject to the same standards" as plaintiff). Therefore, Plaintiff here cannot rely on the alleged comparators to state a claim for failure to promote.

Importantly, an inference of racial discrimination is not plausible "in light of an obvious alternative explanation." *Phillips v. WakeMed*, 5:20-cv-00626, 2021 WL 4891741, at *5 (E.D.N.C. Oct. 19, 2021) (quoting *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*,

780 F.3d 582, 588 (4th Cir. 2015)) *aff'd*, No. 25-2301, 2022 WL 1686672 (4th Cir. May 26, 2022). Here, Plaintiff does not allege he was eligible for promotion since 2016, (Compl. ¶ 28), and quotes a supervisor as stating, "[Y]ou don't do any work." (*Id.* ¶ 39). In addition, Plaintiff alleges he "refused [his supervisor's] directive" to train a younger, non-African American employee in GIS technologies. (*Id.* ¶ 35); *see, e.g., Stokes v. AMF Bakery Sys.*, No. 3:24-CV-789, 2025 WL 2459089, at *5-6 (E.D. Va. Aug. 26, 2025) ("Such an admission is fatal because it renders any inference of "invidious discrimination . . . not plausible in light of the obvious alternative explanation that [the plaintiff] was fired in response to her poor performance, not to her [gender].") (quoting *Phillips v. WakeMed*, No. 5:20-cv-00626, 2021 WL 4891741, at *6 (E.D.N.C. Oct. 19, 2021)), *aff'd*, No. 25-2158, 2026 WL 1470509 (4th Cir. May 26, 2026); *see also Coleman v. McCarthy*, SAG-17-1164, 2021 WL 165130, at *5 (D. Md. Jan. 15, 2021) (granting defense summary judgment on plaintiff's claim as to denied promotion where plaintiff failed to establish she met employer's legitimate expectations), *aff'd*, *Coleman v. Whitley*, No. 21-1181, 2022 WL 16630570 (4th Cir. Nov. 2, 2022). Plaintiff fails to plausibly allege an inference of racial discrimination from his employer's failure to promote him to EAIII.

At bottom, against the backdrop of Plaintiff's admitted refusal to follow his supervisor's directive and the negative comment regarding his work, Plaintiff "cannot un-plead h[is] admission that []he acted in violation of h[is] employer's legitimate expectations," *Stokes*, 2025 WL 2459089, at *5-6.

**2. Disparate Treatment from Other Discrimination**

For similar reasons, Plaintiff fails to state a claim for disparate treatment or denial of opportunities based on allegations that he was denied GIS technology opportunities, and/or that he experienced disparate treatment based on (or by way of) reprimands, leave policies, and his placement in the unit. (Compl. ¶¶ 66, 71, 72, 174, 190). As with the discussion above, the Court will focus its analysis on allegations that could relate to conduct occurring on or after December 15, 2023.

As with a failure-to-promote claim, to establish a prima facie case for a more general denial of opportunities claim, a plaintiff must plead facts that (assumed to be true) demonstrate that he is a "member[] of a protected class, [] applied for the positions in question, [was] qualified for the positions, and [was] "rejected for the position[s] under circumstances giving rise to an inference of unlawful discrimination." *Belton v. City of Charlotte*, 175 F. App'x 641, 655 (4th Cir. 2006). Regarding GIS opportunities, Plaintiff claims that "[t]he GIS Team was both led and comprised of only non-African American/non-black employees of allegedly India[n] origin"; and that Plaintiff, as the only African American employee with GIS training, was "intentionally denied access to GIS technologies" and "maliciously excluded from participating in further GIS training because of his race, color, and origin." (Compl. ¶¶ 46, 56, 66).

However, as with Plaintiff's failure-to-promote claim, Plaintiff fails to allege that he was eligible to join the "GIS team" or receive access to the GIS technologies or additional training opportunities. Plaintiff also fails to allege that he applied for or requested any of these

opportunities. And, as with his failure-to-promote claim, Plaintiff fails to plausibly allege facts that he was rejected under circumstances that give rise to an inference of unlawful discrimination. In fact, Plaintiff alleges that he was initially selected in the 1990s to receive training for GIS technology and participated in the GIS Committee (*id.* ¶ 27), but in later years, Plaintiff refused his supervisor's directive to train another employee in GIS, and Plaintiff allegedly was denied GIS opportunities (*id.* ¶¶ 46, 56, 66). These facts do not plausibly plead circumstances that give rise to an inference of racial discrimination regarding GIS, as Plaintiff's admitted refusal to train another employee in GIS provides an obvious alternative, non-discriminatory justification for his perceived exclusion from GIS opportunities.

Plaintiff further fails to adequately plead disparate treatment with his more general allegations regarding reprimands, denied leave requests, and placement in the unit. The elements of a prima face case for disparate treatment are "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Monero v. Brown, Parker, Demarinis Advertising*, DKC-25-4285, 2026 WL 2349471, at *6 (D. Md. Aug. 13, 2026). As an initial matter, Plaintiff's "involunt[ary] transfer[]" to the "Highway Engineering Division" in 1998, (Compl. ¶ 31); "reassign[ment] to a position of diminished significance" in 2003 (*id.* ¶ 34); and denial of leave in 2004 (*id.* ¶ 38) are time-barred, as each event constitutes discrete conduct outside the 300-day time period. *Morgan*, 536 U.S. at 113-14. Regarding "reprimands," Plaintiff has put forward only conclusory allegations that fail to allege disparate treatment with any specificity, and, therefore, these allegations cannot withstand a motion to dismiss. (*See* Compl. ¶¶ 33 ("subjected to unwarranted reprimands"), 178 (alleging race was a factor for

poor performance evaluations, "unsubstantiated reprimands")); *Laurent-Workman v. Wormuth*, 54 F.4th 201, 210, 212 (4th Cir. 2022) (recognizing "factual allegations" must "raise a right to relief above the speculative level"). These additional allegations of discrimination fail to plausibly state a claim for disparate treatment based on race.

In sum, Plaintiff fails to state a claim for failure-to-promote or other disparate treatment based on his employer's failure to promote him to the EAIII position, alleged denial of GIS opportunities, and disparate reprimands, denied leave, and placement within the unit.

### B. Hostile Work Environment Claim: Count II under Title VII, Section 1981, the ADA, and the ADEA

Plaintiff's Count II for hostile work environment[8] similarly fails to state a claim. Defendant contends that this Count fails to state a claim because the allegations are not tied to a protected characteristic and are neither sufficiently pervasive nor severe to state a claim. (ECF No. 15-1 at 9-10). For the reasons explained below, the Court agrees.

To allege hostile work environment, a plaintiff generally must plead: "(1) unwelcome conduct; (2) that is based on the plaintiff's . . . [protected characteristic or activity]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 407 (4th Cir. 2022) (quoting *Boyer-Liberto*, 786 F.3d at 277). To

---

[8] Plaintiff's Count II is unclear as to which statute or statutes it claims were violated. The only statute expressly referenced is Title VII, however, there are also allegations pertaining to disability and age, so the court considers all four federal statutes in its analysis. Hostile work environment claims are analyzed similarly under Section 1981, the ADA, the ADEA, and MFEPA. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 268 (4th Cir. 2015) (Section 1981); *Vann v. Morton*, 3:24cv635, 2025 WL 2524119, at *3 (E.D.Va. Sept. 2, 2025) (analyzing Title VII, ADEA, and ADA hostile work environment claims jointly); *Tonin v. Baltimore City Police Dep't*, DKC 19-0323, 2020 WL 6746476, at *10-11 (D. Md. Nov. 17, 2020) (ADA).

allege that harassment occurred because of a protected characteristic, a plaintiff must present a particularized basis for alleging that the "discriminatory conduct was because of membership in a protected class." *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 310-11 (D. Md. 2015). In other words, facts pled must give rise to a reasonable inference that the plaintiff was the "target of the conduct because of [his race, national origin, disability, or age]." *Id.* at 310 (citing *Engler v. Harris Corp.*, GLR-11-3597, 2012 WL 3745710, at *5 (D. Md. Aug. 28, 2012) and collecting cases).

### 1. Plaintiff does not allege the conduct was tied to a protected characteristic

Here, Plaintiff alleges various instances of unwelcome conduct, none of which is sufficiently tied to any protected characteristic. Under Fourth Circuit precedent, poor treatment by supervisors is insufficient to make out a hostile work environment claim where the supervisor "never made any derogatory comments about [plaintiff's] race or age, and nothing about his conduct suggests it was based on these factors." *Causey v. Balog*, 162 F.3d 795, 801-802 (4th Cir.1998). That is the case here. Plaintiff alleges multiple remarks by his superiors that he contends were tied to race, color, or national origin, but none of them includes derogatory or overtly racist terms or content: then-supervisor Mr. Power's statement "You can leave [my office] because I will not be promoting you under any circumstances!" (Compl. ¶ 30); then-supervisor Mr. Zaied's statement "You should leave DOT because I am not going to promote you even though I heard you do great work!" (*id.* ¶ 32); in 2005, Plaintiff was subjected to a "closed-door" meeting in which two other employees "of India[n] origin" subjected him to unspecified verbal threats and physical intimidation after he refused a supervisor's directive to train a non-black employee (*id.* ¶¶ 35, 87); and then-supervisor Mr.

Lazano's statement "You are nothing and you don't do any work." (*id.* ¶ 39). These encounters do not involve derogatory terms or epithets, which typically support hostile work environment claims. *Cf. Chapman v. Oakland Living Center, Inc.*, 48 F.4th 222, 225 (4th Cir. 2022) (reversing summary judgment for employer where child of employee's supervisor called employee a racial epithet on three occasions); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280-81 (4th Cir. 2015) (reversing summary judgment for defendant where supervisor called employee a "porch monkey" more than once).

Plaintiff's other allegations, which are similarly coupled with conclusory allegations of discriminatory animus or favorable treatment afforded to other groups, fall short of the pleading standard for a hostile environment claim. *See, e.g.*, *Young*, 108 F.Supp.3d at 310-11 (collecting cases). For example, Plaintiff claims that he was "continuously shuffled to positions of lesser significance," "denied promotions to EAIII," subjected to a "concerted effort to force him to quit his DOT employment," (Compl. ¶ 88); and denied leave, GIS technologies, and training. (*id.* ¶¶ 89-90). In these and other circumstances, "Plaintiff believed he was being treated differently because of his race, color, national origin, and age," (*id.* ¶¶ 90), but such conclusory allegations based on a subjective belief are insufficient to tie the alleged conduct to a protected characteristic. *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir.2007) (conclusory statements that plaintiff was treated differently because of race and "general statements of dissimilar treatment" insufficient to show discrimination based on race).

Although Plaintiff alleges that "non-African American/non-black employees were provided more favorable" employment terms and conditions, (Compl. ¶ 88), he provides no allegations from which to reasonably infer that the favorable treatment was due to their race

as opposed to other skills or supervisor favoritism. *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 281 (4th Cir.2000) (bare allegation that supervisor "did not subject any of [plaintiff's] white peers to similarly poor treatment" did not show the treatment "was due to race rather than [the supervisor's] admittedly low regard for [plaintiff's] individual performance"); *Young*, 108 F. Supp. 3d at 310-11 (finding insufficient allegations that male employer "exhibited a particular disdain and disrespect for [female plaintiff] as compared to her male colleagues" and "often yelled at [her] and otherwise spoke disrespectfully"). Indeed, Plaintiff does not allege that any other employees sharing his protected characteristics were discriminated against to raise an inference that the treatment of which he complains was based on race, national origin, or age. *Young*, 108 F.Supp.3d at 310-11. Plaintiff's allegations are not sufficiently tied to a protected characteristic to plausibly allege a hostile environment claim.

**2. Plaintiff has not alleged that the conduct was severe or pervasive.**

The "severe or pervasive" determination is not a "mathematically precise test." No single factor is dispositive; instead, the Court must consider "all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the] employee's work performance.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015).

Defendant contends that Plaintiff's allegations are similar to those rejected by courts within this Circuit. (ECF No. 15-1 at 9-10, citing *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 599

(D. Md. 2018)). Plaintiff counters that his allegations of physical intimidation, humiliation, and resulting "mental[]health injuries" qualify as "severe or pervasive." (ECF No. 21-1 at 20-23).

As Defendant correctly notes, in *Chang Lim v. Azar*, the Court dismissed a hostile work environment claim based on national origin because the plaintiff failed to allege facts tying the conduct to national origin, or that the conduct was sufficiently severe or pervasive. *Chang Lim* is instructive here. In *Chang Lim*, Judge Chuang of this Court reasoned that the plaintiff's "alleged denial of his requests to change his preceptor, the setting of 'bogus deadline[s]' for submitting project proposals, plagiarism of his work, derogatory statements about his competence and professionalism, and 'treating him as a jerk,'" failed to rise to the level of a hostile work environment. *Id.* at 599. The Court found noteworthy that the *Chang Lim* plaintiff alleged "no physically threatening conduct, abusive communication, or even raised voices in his description of each of the above incidents." *Id.* at 599. The Court observed that the Fourth Circuit had declined to find a hostile work environment based on more severe allegations, including "a supervisor mockingly yelling at the plaintiff in a meeting, yelling and pounding her hands on her desk during another meeting, . . . playing favorites with employees and pitting employees against each other," and "unfairly scrutinizing and criticizing" the plaintiff's "use of leave and lack of compliance with directives." *Id.* at 599-600 (quoting *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013)).

Plaintiff's allegations here similarly do not rise to the level required for a hostile work environment claim. *Richardson v. Maryland Transit Admin.*, RDB-18-0884, 2019 WL 1002597, at *9 (D. Md. 2019) ("[M]erely identifying a few incidents of harassment and broadly alleging a hostile work environment does not suffice."). Plaintiff's general allegations, such as "Plaintiff

endured increasing workplace hostilities, intimidations, and unwelcomed harassment" (Compl. ¶ 91) and that he "continued to suffer bullying" (*id.* ¶ 91) are too conclusory and generalized to satisfy the pleading standard under Rule 12(b)(6) for a hostile work environment claim. *See, e.g.*, *Richardson*, 2019 WL 1002597, at *9.

Plaintiff's more detailed allegations of harassment over his 37 years at the Department include that he was denied promotions, leave requests, and professional development opportunities for GIS technology. (Compl. ¶¶ 89-90). He alleges that on one occasion in the early 2000s, he was subjected to a "closed-door" meeting in which two other employees "of India[n] origin" subjected him to unspecified verbal threats and physical intimidation after he refused a supervisor's directive to train a non-black employee (*id.* ¶¶ 35, 87); and was "continuously shuffled to positions of lesser significance." (*id.* ¶ 88). These allegations of denied opportunities, an encounter with co-workers that included unspecified threats and intimidation, and unwelcome transfers, are analogous to the cases within this Circuit dismissing hostile work environment claims for lack of severity and pervasiveness. *Chand v. Braithwaite*, No. 3:20-1578, 2020 WL 9209284, at *2 (D.S.C. Sep. 1, 2020) (citing cases and dismissing a hostile work environment claim where plaintiff's supervisor allegedly intimidated plaintiff in a conversation with his coworker, provided plaintiff with negative performance evaluations, and denied plaintiff various workplace privileges); *Richardson*, 2019 WL 1002597, at *9 (dismissing claim where plaintiff "generally alleged that she 'was isolated, ignored, harassed, and bullied at various times' by her employer," experienced a "heated exchange" with her supervisor, and received a negative performance evaluation); *Vincent v. MedStar S. Md. Hosp. Ctr.*, TDC-16-1438, 2017 WL 3668756, at *9-10 (D. Md. Aug. 22, 2017) (finding plaintiff

failed to allege hostile work environment where supervisor yelled at employee, called her "stupid," refused to communicate with her, and restricted her access to the computer system).

Here, even the Complaint's more detailed allegations do not support that Defendant's conduct occurred sufficiently frequently over the course of Plaintiff's 37-year tenure, nor is any of the cited conduct indicative of the extreme conditions that creates a hostile work environment. *Compare Tonin v. Balt. City Police Dep't*, DKC 19-0323, 2020 WL 6746476, at *9-11 (finding plaintiff failed to allege sufficiently frequent conduct over four- to five-year period to support pervasiveness), *with Curran v. Mom's Organic Market Inc.*, AAQ-24-00402, 2024 WL 4955274, at *5 (D. Md. Dec. 2, 2024) (finding detailed allegations of supervisor's daily and weekly conduct plausibly alleged hostile work environment). Plaintiff fails to plausibly allege severe or pervasive conduct to support a hostile work environment claim.

**C. Retaliation: Count III Under Title VII**

To succeed on a claim of retaliation, "a plaintiff must show that: (1) [he] engaged in a protected activity; (2) the employer acted adversely against [him]; and (3) there was a causal connection between the protected activity and the adverse action." *Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 280 (D. Md. 2023) (citations omitted). Defendant argues that Plaintiff fails to satisfy each of the elements, because the Complaint lacks adequate details regarding the complaints filed, the adverse actions Plaintiff experienced in response, or facts to support a causal link between the reports and any adverse action. (ECF No. 15-1 at 10-12). The Court finds that Plaintiff has failed to plead facts adequate to satisfy the third element.

First, Plaintiff adequately pleads that he engaged in protected activity. Title VII protects employees from retaliation for opposing unlawful employment practices. *See, e.g.*, *Netter v. Barnes*, 908 F.3d 932, 937–38 (4th Cir. 2018) (citing 42 U.S.C. § 2000e-3(a)). Oppositional activity includes "'complaining to superiors about suspected violations of Title VII.'" *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 328 (4th Cir. 2018) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc)). To warrant protection under Title VII, however, "an employee's complaints must . . . communicate 'a belief that the employer has engaged in . . . a form of employment discrimination' based on a protected class." *Chang Lim*, 310 F. Supp. 3d at 604 (second alteration in original) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)). That is, "complaining employees are protected if, at the time of their complaint, they 'have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress.'" *Strothers*, 895 F.3d at 327 (citing *Boyer-Liberto*, 786 F.3d at 282).

In his Opposition, Plaintiff points to the following reporting cited in the Complaint: (1) an internal complaint to the Office of Policy and Compliance within the Department of Human Resources in September 2023; (2) a grievance to the Office of Inspector General in October 2023; (3) complaints to then-Baltimore City Council President, which resulted in a conversation between the Chief of Staff and Plaintiff's then-supervisor, Mr. Bimal Devkota; (4) a formal complaint to the U.S. Department of Justice Civil Rights Division on or about March 15, 2024; and (5) an EEOC Charge of Discrimination on or about October 10, 2024. (ECF No. 21-1 at 25, citing Compl. ¶¶ 9-11, 37, 53, 90-93, 103-104, 108).

Defendant correctly notes that the EEOC Charge filed after Plaintiff's resignation cannot support a claim of pre-termination retaliation. (ECF No. 15-1 at 10-11). However, Plaintiff alleges that he reported a grievance to the Inspector General in October 2023, and to Baltimore City Council members, "that he was being treated differently because of his race, color, national origin, and age." (Compl. ¶¶ 9-11, 37). Plaintiff also alleges that after he reported discriminatory conduct based on "race, color, national origin, and age" to the office of the Baltimore City Council President, the office contacted his supervisor who suggested that Plaintiff find another job. (*id.* ¶¶ 90-93). Plaintiff thus sufficiently alleges protected activity, as he communicated his reasonable belief that the Department was engaging in discriminatory conduct during his employment. *Cf. Chang Lim*, 310 F. Supp. 3d at 604 (dismissing Title VII retaliation claim where plaintiff did "not allege in the Second Amended Complaint or elsewhere that he communicated his views about [the alleged discriminator's] motivations" or otherwise mentioned race, color, or national origin).

Regarding the second element, an adverse employment action, Plaintiff alleges various undated events: "adverse actions related to his leave, including increased hostility, denying leave for medical appointments, and constructive discharge." (Compl. ¶ 105); *see Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999) (recognizing adverse employment actions may involve "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion."). "Constructive discharge may serve as the adverse employment action in a Title VII retaliation claim." *Bailey v. Va. Dep't of Alcoholic Beverage Control*, No. 2:18cv392, 2019 WL 123903, at *7 (E.D. Va. Jan. 7, 2019). Therefore, at this stage, the Court accepts that Plaintiff has adequately pleaded adverse employment action.

However, Plaintiff fails to satisfy the third element of a claim for retaliation: a causal link between the reporting and the adverse employment action. For a causal link, a plaintiff must plead facts that, taken as true, "show that a relevant decisionmaker was actually aware of the protected activity before making their decision." *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025) (citing *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (4th Cir. 2021)). The Fourth Circuit has recognized two methods through which an employee may allege an inference of causation. First, temporal proximity of "no longer than two months" between the protected activity and the materially adverse action may, alone, support an inference of causation. *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025) (citing *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (4th Cir. 2021)); *see Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (explaining "the temporal proximity must be 'very close'" (citation omitted)). Second, "even in the absence of temporal proximity, causation can be established through a pervasive sequence of intervening events indicating disdain for or intermeddling with the protected activity." *Barnhill*, 138 F.4th at 132 (collecting cases).

Here, Plaintiff's Complaint fails to plead facts to support such causation. Plaintiff does sufficiently allege that his employer was made aware of one of the reports of discrimination brought during his employment: the complaint made to the Baltimore City Council President's office. (*Compare* Compl. ¶¶ 90-93, alleging complaint communicated to supervisor from Chief of Staff to City Council President, *with* Compl. ¶¶ 9, 37, 103, lacking allegations regarding employer's awareness of Inspector General complaint; and *see* Compl. ¶¶ 9, 53, lacking allegations regarding employer's awareness of Office of Policy and Compliance complaint). But Plaintiff's conclusory allegation that "Defendant, including its agents and Plaintiff's

reporting supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions" fails to plausibly allege, beyond a speculative level, that Defendant was aware of Plaintiff's other reports.

Even Plaintiff's less conclusory allegations regarding Defendant's awareness of Plaintiff's protected activity fail to allege a causal link. As mentioned above, Plaintiff alleges that he contacted the President of the Baltimore City Council with complaints of discriminatory conduct and that the Chief of Staff contacted Plaintiff's then-supervisor Mr. Bimal Devkota, who responded by telling Plaintiff, "Why don't you find [look for] another job!" (Compl. ¶ 90). Notably, however, Plaintiff pleads no facts regarding the timing of these interactions to assess whether temporal proximity exists between this and any asserted adverse action or whether a pervasive sequence of intervening events occurred between the protected activity and the adverse employment action. *Barnhill*, 138 F.4th at 132. Without any indication of timing or the sequence of the alleged conduct, Plaintiff's Complaint fails as to the third element for a Title VII retaliation claim.

**D. Age Discrimination: Count IV Under the ADEA**

To state a prima facie claim of age discrimination, a plaintiff must allege that he: "(1) was protected by the ADEA; (2) suffered an adverse employment action; (3) was performing his job at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) was replaced by a substantially younger worker." *Kalonji v. Prince George's Cnty. Sheriff Off.*, Civ. No. LKG-24-2875, 2026 WL 319032, at *2 (D. Md. Feb. 6, 2026) (citing *Westmoreland v. TWC Admin., LLC*, 924 F.3d 718, 725 (4th Cir. 2019)); *see also*

*Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (applying burden-shifting framework to ADEA claim).[9]

As Defendant correctly notes, Plaintiff's conclusory allegations that repeat the elements of the claim, without any details, such as dates or names of individuals, fail to plausibly state a claim for age discrimination above a speculative level. *Washington v. Balt. City Police Dep't,* LKG-22-2212, 2023 WL 6308090, at *6 (D. Md. Sept. 28, 2023) (dismissing ADEA failure-to-promote disparate treatment claim because plaintiff did not provide "sufficient factual allegations" to "support a reasonable inference that the decision makers were motivated by [age] bias"). Moreover, as discussed above, Plaintiff fails to plausibly allege that he was performing his job at a level that met his employer's legitimate expectations at the time he resigned or at any other time related to his allegations of age discrimination.

Regarding favorable treatment of younger employees, Plaintiff's allegations include the following: "Plaintiff was repeatedly denied promotion to Engineering Associate III, while younger non-African American/non-black co-workers, with less experience than the Plaintiff or no engineering training were promoted or hired as an EAIII," (Compl. ¶ 123); and that "Plaintiff repeatedly requested wage increases, fair performance evaluations, and promotions to EAIII which were afforded to younger non-African American/non-black co-workers," (*id.* ¶ 123). These bare allegations fail to allege that similarly situated employees outside of Plaintiff's protected class received more favorable treatment. *Washington v. Balt. City Police Dep't,*

[9] Individuals 40 years of age and older receive protected status under the ADEA. 29 U.S.C. § 631(a). Plaintiff alleges he was born in 1961, (Compl. ¶ 19); thus, he would have been over 40 years old at the time of his resignation in 2024.

LKG-22-2212, 2023 WL 6308090, at *6 (D. Md. Sept. 28, 2023) (dismissing complaint where it failed to allege that plaintiff "share[d] similar professional qualifications, such as work experience, training and educational background, to plausibly show that Plaintiff's non-promotion was due to her age rather than other factors"); *Myers v. Md. Auto. Ins. Fund*, CCB-09-3391, 2010 WL 3120070, at *5 (D. Md. Aug. 9, 2010) (finding insufficient conclusory allegations of differential treatment where plaintiff failed to allege younger employee's name, job title, or similar job performance). Thus, Plaintiff fails to state a claim for age discrimination.

**E. Disability Discrimination: Count V Under the ADA**

To plead a claim of discrimination under the ADA, a plaintiff must allege (1) he was a qualified individual with a disability as defined in the statute; (2) his employer was aware of his disability; (3) he could perform the essential functions of his position with or without a reasonable accommodation; and (4) his employer refused to make an accommodation. *Reyazuddin v. Montgomery County*, 789 F. 3d 407, 414 (4th Cir. 2015); *Cole v. Fam. Dollar Stores of Maryland, Inc.*, 811 F. App'x 168, 176 (4th Cir. 2020).

Plaintiff fails to provide sufficient allegations regarding his alleged disability's (or disabilities') effect on his work performance or that a reasonable accommodation was necessary to enable (or would have enabled) him to perform the essential functions of his job to support a plausible inference that Plaintiff was a qualified individual entitled to reasonable accommodation under the ADA. *See Marrero v. Verizon Maryland, LLC*, MJM-24-3311, 2026 WL 2469219, at *7 (D. Md. Aug. 24, 2026) (dismissing failure-to-accommodate claim where complaint lacked "factual allegations concerning the essential functions of Plaintiff's position,

the nature of his physical [or mental] limitations, and how the requested accommodations would have permitted him to perform the work required of the position.").

Regarding the fourth requirement, the employer's refusal or failure to accommodate, Plaintiff's only allegation as to Defendant's failure to accommodate is alleged to have occurred on or around 2009. (Compl. ¶ 144). As explained above, claims for discrete discriminatory conduct under the ADA, including failure-to-accommodate claims, are time-barred where based on conduct occurring prior to December 15, 2023. *Id.* (citing *Leonard v. Towson Univ.*, GLR-21-1464, 2022 WL 3867949, at *5 (D. Md. Aug. 30, 2022)). Plaintiff's remaining allegations—which simply recite the elements or allege in conclusory fashion that "Plaintiff's disability was a determining and motivating factor in Defendant's unlawful conduct toward Plaintiff, denying the Plaintiff reasonable accommodations at work"—also fail to plausibly allege disability discrimination. (*See, e.g.*, Compl. ¶¶ 144-45, 151); *Twombly*, 550 U.S. at 555.

**F. Medical Leave Retaliation: Count VIII Under FMLA**

Similar to a Title VII retaliation claim, under the FMLA, "Plaintiff must prove three elements to establish a prima facie case of retaliation: (1) '[]he engaged in a protected activity'; (2) 'h[is] employer took an adverse employment action against h[im]'; and (3) 'there was a causal link between the two events.'" *Bryant v. Mayor and City Council of Balt.*, MJM-21-0545, 2023 WL 6307823 (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc)). Here, Plaintiff alleges that he engaged in protected activity under 29 U.S.C. § 2615(a) by requesting leave on November 16, 2023, and taking leave effective December 11, 2023, through May 24, 2024, "for a qualifying serious health condition." (Compl. ¶¶ 196-97).

Defendant does not dispute that Plaintiff sufficiently alleges he engaged in protected activity by requesting FMLA leave. (ECF No. 15-1 at 14).

However, Plaintiff does not allege facts to support a plausible causal link between his FMLA leave and the alleged adverse employment actions, such as his resignation in April 2024 or "denial of reasonable workplace accommodations." (*See* Compl. ¶¶ 196-210); *see, e.g.*, *Dorsey v. Bd. of Ed. Frederick Cnty.*, ABA-25-3731, 2026 WL 2484279 (D. Md. Aug. 26, 2026) (dismissing FMLA retaliation claim where plaintiff failed to allege "specifics regarding his FMLA leave" to support causal link to adverse actions, such as "delaying approval, harassing him about returning to work, and pressuring him to retire"). Although Plaintiff references the temporal proximity between requesting and taking leave (November 16 and December 11, 2023, respectively), (Compl. ¶¶ 199-201), neither event falls within two months of the alleged constructive discharge in April 2024. *See Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025) (recognizing proximity of "no longer than two months" between the protected activity and the materially adverse action may, alone, support an inference of causation); *Conway v. Kijakazi*, JRR-21-0502, 2023 WL 5153641, at *10 (D. Md. Aug. 10, 2023), *aff'd sub nom. Conway v. Bisignano*, No. 24-1199, 2025 WL 1431176 (4th Cir. May 19, 2025) (collecting cases recognizing time periods of three-to-four months or more from the protected activity are insufficient to support retaliatory hostile environment claim unless there are allegations of "retaliatory animus" in intervening period (citations omitted)). The Complaint also fails to plausibly allege any other facts to support a causal relationship between Plaintiff's FMLA leave and the alleged adverse employment actions (*i.e.*, denied accommodation, harassment, and resignation);

notably, Plaintiff was granted medical leave and not working during this period. (Compl. ¶¶ 196-97).

### G. Constructive Discharge: Count IX Under Title VII[10]

"To advance a claim for 'constructive discharge,' the plaintiff must establish: (1) the employer deliberately made an effort to force the employee to quit; and (2) that the working conditions were intolerable." *McCain v. Waste Mgmt., Inc.*, 115 F. Supp. 2d 568, 574 (D. Md. 2000) (citing *Munday v. Waste Management of N. Am.*, 126 F.3d 239, 244 (4th Cir.1997)). A constructive discharge claim requires "'something more' than the showing required for a hostile work environment claim." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 143 (2004))).

Regarding the first element, deliberateness "require[s] proof of the employer's specific intent to force an employee to leave," which "may be inferred through circumstantial evidence," such as a failure to act in response to complaints. *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985) (citations omitted), *cert. denied*, 475 U.S. 1082 (1986). At this stage, the Court finds Plaintiff plausibly alleges facts to support a reasonable inference of intent to force him to leave. Specifically, Plaintiff alleges that when his then-supervisor, Mr. Bimal Devkota, was notified of Plaintiff's complaints of discrimination based on race, color, and national origin, related to GIS opportunities, Mr. Devkota responded, "Why don't you find [look for] another job!" (Compl. ¶¶ 90-92; brackets in original). Plaintiff also alleges statements that his supervisors would not promote him "under any circumstances[,]" (*id.* ¶¶ 30, 32).

---

[10] As Defendant notes, Count IX does not specify the statute on which it is based. Therefore, Defendant analyzed the claim under the Title VII framework. (ECF No. 15-1 at 1 n.7). Plaintiff's Opposition does not dispute this approach. (ECF No. 21-1 at 27-29). Accordingly, the Court analyzes this claim under Title VII.

However, Plaintiff fails to plausibly allege intolerable work conditions. Intolerability of work conditions is assessed "by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign, . . . that is, whether he would have had no choice but to resign." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 209 (4th Cir. 2019). "Intolerability is a high bar." *Jordan v. Lonza Walkersville, Inc.*, MJM-24-1128, 2025 WL 975050, at *6 (D. Md. Mar. 31, 2025). As Judge Maddox of this Court aptly explained:

> Allegations such as yelling by supervisors, receiving poor evaluations, being chastised in front of customers, "even if true, do not establish the objectively intolerable working conditions necessary to prove a constructive discharge." *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004). Further, "[t]he 'frequency of the conditions at issue' is an important part of the intolerability assessment." *EEOC v. Greyhound Lines, Inc.*, 554 F. Supp. 3d 739, 753 (D. Md. 2021) [ ]. "The more continuous the conduct, the more likely it will establish the required intolerability. On the other hand, when the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability." *Evans*, 936 F.3d at 193.

*Jordan*, 2025 WL 975050, at *6. A Title VII constructive discharge claim requires allegations "show[ing] 'something more' than the showing required for a hostile work environment claim." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 143 (2004).

Here, Plaintiff fails to allege intolerable conditions and therefore cannot state a claim for constructive discharge. As explained above, Plaintiff fails to adequately plead a hostile work environment under Title VII; these same allegations do not satisfy the "something more" required for a constructive discharge claim. *See, Evans, supra*; and *see Jordan*, 2025 WL 975050, at *7 (dismissing constructive discharge claim based on failure to state hostile work environment claim).

Plaintiff's less conclusory allegations are that he was excluded from GIS opportunities, not promoted to EAIII, and criticized by coworkers and supervisors over his 37 years at the Department. Courts within this Circuit have found similar facts insufficient for a constructive discharge claim. *See Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (finding insufficient allegations of yelling by supervisor, criticisms in poor evaluations, and chastising in front of customers); *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 273 (4th Cir. 2001) (finding insufficient allegations that plaintiff was ostracized, not promoted, and received disciplinary action for inaccurate time card); *Munday v. Waste Management of N. Am.*, 126 F. 3d 239, 241, 244 (4th Cir. 1997) (finding employment status was not altered notwithstanding manager's "intent to persuade her to resign or the fact that he successfully made her working environment unpleasant" by, *inter alia*, instructing other employees to ignore plaintiff), *cert. denied*, 522 U.S. 1116 (1998), *remanded* 997 F. Supp. 681 (D. Md. 1998), *abrogated on other grounds by Burlington N. and Santa Fe Ry. v. White*, 126 S. Ct. 2405 (2006).

In his Opposition, Plaintiff emphasizes his alleged "work-induced medical conditions, including PTSD, anxiety, and depression," and urges that these facts distinguish the circumstances here. (ECF No. 21-1 at 29). Consideration of these allegations does not counsel a different result. Plaintiff alleges that at the time of his resignation, he was on extended medical leave, which the Department had granted. Therefore, it is not plausible that the Department created intolerable working conditions leading to his resignation when the Department authorized leave to ameliorate these conditions. On the face of the allegations and affording Plaintiff the benefit of all reasonable inferences, Plaintiff fails to state a claim for constructive discharge.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (ECF No. 15) shall be granted. A separate Order follows.

September 29, 2026

/S/
______________________________
Julie R. Rubin
United States District Judge